IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


KEITH OAKLEY, #340653              *
                    Plaintiff,
        v.                         *     CIVIL ACTION NO. AW-10-2118

J. MICHAEL STOUFFER[1]             *
BOBBY SHEARIN
                    Defendants.    *
                                  ***

### MEMORANDUM

I.    *Procedural History*

On August 2, 2010, the court received for filing the above-captioned 42 U.S.C. § 1983

civil rights action dated July 29, 2010 and submitted by Maryland Division of Correction inmate

Keith Oakley ("Oakley").  Oakley complains that on July 14, 2007, he was left unprotected in a

small prison recreation yard when a "major disturbance" occurred in the main prison recreation

yard at the Western Correctional Institution ("WCI").  He claims that when officers guarding his

recreation yard rushed to the scene of the larger disturbance, he was brutally assaulted by

members of the Bloods gang.[2]  In a lengthy chronology Oakley alleges that: (1) he was not

initially provided medical treatment but later was taken to the WCI Infirmary, where he

remained for only three days; (2) upon his release from the Infirmary he was placed in an

unsanitary administrative segregation cell without a mattress and was not provided linens,

---

[1] The Clerk shall amend the docket to reflect the proper spelling of this Defendant's name as "Michael" not
"Micheal."

[2] Oakley premises his complaint on the notion that correctional officers should have remained in his "small yard" to
protect him from fellow prisoners who were also recreating there at the time of the major disturbance.  In his
opposition motion (ECF No. 19 at 1) Oaklay states for the first time that he repeatedly told Oficers W. Lease,
Endros and R. O. Baker of "repeated…threats against his person…to no avail" two days prior to the attack. These
officers were never named as party defendants to this action.  Oakley's attempt to present this claim at this stage in
the litigation process will not be permitted; the allegation that several officers knew he was at risk by unspecified,
unnamed fellow prisoners is not subject to examination here.

toiletries, or hygiene items; and (3) on or about July 18, 2007, he awoke with sharp rib pain and vomited blood, he received a mattress and toiletries, and officers placed an inmate with hepatitis in his cell in hope that the two inmates would fight. Oakley states generally that he has continuously been denied treatment for the injuries sustained in the July 14, 2007, incident.

Oakley further claims that on July 27, 2007 he was transferred to the Maryland Correctional Institution in Jessup ("MCIJ"), where he suffered from pain due to the denial of medical treatment or medication for the following three to four months. He also contends that on unspecified dates he was transported to Allegany County, Maryland to appear as a witness against the inmate who attacked him on July 14, 2007, and personnel at MCIJ refused to give him medication or a back brace for pain endured during the prison van transport. Oakley also states that during the court proceeding he was temporarily housed at WCI and was subject to the same conditions of confinement he experienced in July of 2007.

Pending before the court are Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment and Oakley's Opposition thereto. ECF Nos. 17, 19, 23 and 26.[3] Oakley also renews his previous motion requesting appointment of counsel.[4] ECF Nos. 22, 25

---

[3] Although titled as a "Motion to Supplement," ECF No. 26 is merely a supplement to Oakley's previously filed opposition memoranda.

[4] Oakley claims that he has physical and psychological disabilities and he requires the assistance of counsel to ensure that he can prepare affidavits and obtain discovery and otherwise present his case. He further asserts that he does not have use of a typewriter or computer, is unable to afford counsel, his imprisonment limits his ability to litigate, he has limited access to legal materials and knowledge of the law, he has made repeated attempts to obtain a lawyer, and an attorney would be better able to present evidence and cross-examine witnesses if the case were to proceed to trial. He indicates he is relying on a fellow prisoner to assist with his pleadings. *Id.*; *see also* ECF No. 20. Oakley has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(e). Under § 1915(e)(1) a court of the United States has the discretion to request an attorney to represent any person unable to afford counsel. The appointment of counsel in such situations may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). The question of whether such circumstances exist in any particular case rests on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984); *abrogated on other grounds by Mallard v U.S. District Court*, 490 U.S. 296, 298 (1989). The existence of exceptional circumstances "[w]ill turn on the quality of two basic factors--the type and complexity of the case, and the abilities of the individuals." *Id.* Oakley has thus far shown the wherewithal to present his Complaint, briefing,

and 25.  For reasons to follow, the pending dispositive motion shall be dismissed without oral hearing.  *See* Local Rule 105.6 (D. Md. 2010).

II.  *Standard of Review*

*Motion to Dismiss*

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, 554 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'"  *Id.* at 557-558  (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005).  "[T]hreadbare recitals of the elements of a cause of action, supported by mere statements, do not suffice." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S.Ct. 1937, 1949 (2009).   In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff."  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).   However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions."  *Takacs v. Fiore*,  473 F.Supp.2d  647, 651 (D. Md.  2007).

*Motion for Summary Judgment*

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a

---

and other papers.   Further, the allegations in this case do not involve complicated issues for review.  Oakley has failed to show a particular need or exceptional circumstances which would require the assistance of a trained practitioner. Therefore the Motion for Appointment of counsel shall be denied.

matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex*, 477 U.S. at 322-323. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

*Failure to Protect*

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir.1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. As with the subjective awareness element, it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were

insufficient. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the prisoner must show a serious physical injury. *See De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).

*Denial of Medical Care*

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *See Gregg v. Georgia,* 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De Lonta v. Angelone*, citing *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). To state an Eighth Amendment claim for denial of medical care, Oakley must demonstrate that the actions of Defendants (or their failure to act) amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the serious medical condition. *Farmer,* 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter …becomes essential to proof of deliberate indifference 'because

prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'"

*Brice v. Virginia Beach Correctional Center,* 58 F.3d 101, 105 (4th Cir. 1995), quoting *Farmer,*

511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid

liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."

*Farmer,* 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk

the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383 (4th Cir. 2001),

citing *Liebe v. Norton,* 157 F.3d 574, 577 (8th Cir. 1998). Mere medical negligence or

malpractice does not violate the Eighth Amendment. *See Estelle,* 429 U.S. at 106.

*Conditions of Confinement*

Conditions which "deprive inmates of the minimal civilized measure of life's necessities"

may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U. S. 337, 347 (1981).

However, conditions which are merely restrictive or even harsh, "are part of the penalty that

criminal offenders pay for their offenses against society." *Id.*

> In order to establish the imposition of cruel and unusual
> punishment, a prisoner must prove two elements - that 'the
> deprivation of [a] basic human need was *objectively* sufficiently
> serious,' and that '*subjectively* the officials acted with a sufficiently
> culpable state of mind.'

*Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (emphasis in original; citation omitted).

"[T]o withstand summary judgment on an Eighth Amendment challenge to prison

conditions a plaintiff must produce evidence of a serious or significant physical or emotional

injury resulting from the challenged conditions." *Strickler v. Waters*, 989 F.2d 1375, 1381 (4th

Cir. 1993).

III. *Procedural Defenses*

*Exhaustion of Administrative Remedies*

The Prison Litigation Reform Act ("PLRA") generally requires a prisoner to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Oakley's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id*. at 530; *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or final administrative review after the prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"), *abrogated on other grounds by Woodford v. Ngo*, 548 U.S. 81 (2006); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner

must follow all administrative steps to meet the exhaustion requirement, but need not also seek judicial review); *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated within thirty calendar days of the incident (or of the date the inmate first gained knowledge of the incident or injury) is the first of three steps in the ARP process provided by the DOC. If this request is denied, the prisoner has thirty calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the IGO. *See* Division of Correction Directive 185-002.VI.L-N; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 10-209.

Oakley clearly disputes Defendants' allegation of non-exhaustion and provides voluminous exhibits showing his attempts to complete same. ECF No. 19 and exhibits included therein. This Court is obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials. *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 10th Cir. 2007). The evidence here suggests that Oakley did not fully understand the need to limit each ARP complaint to one aspect of his ongoing claim, and his attempts to remedy the deficiencies resulted in the dismissals of his ARPs as untimely. The Court will not dismiss this case for failure to properly exhaust administrative remedies.

*Statute of Limitations*

Defendants argue that any aspect of Oakley's claim arising prior to August 2, 2007, is barred under the applicable statute of limitations. When enacting 42 U.S.C. § 1983, Congress determined that gaps in federal civil rights acts should be filled by state law, as long as that law

is not inconsistent with federal law. *See Burnett v. Grattan*, 468 U.S. 42, 47-48 (1984). Because no federal statute of limitations governs, federal courts routinely measure the timeliness of federal civil rights suits by state law. *Id*. at 49; *Chardon v. Fumero Soto*, 462 U.S. 650, 655-656 (1983); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 464 (1975). The tradition of borrowing analogous limitations statutes is premised on a congressional decision to defer to "the State's judgment on the proper balance between the policies of repose and the substantive polices of enforcement embodied in the state cause of action." *Wilson v. Garcia*, 471 U.S. 261, 271 (1985). Upon review of Maryland's limitations provisions, Maryland's general three-year statute of limitations for civil actions is most applicable to the case at bar. *See* Md. Code Ann., Cts. & Jud. Proc., § 5-101.

Although the state statute of limitations applies, the time of accrual of the action is a federal question. *See Cox v. Stanton*, 529 F.2d 47, 50 (4th Cir. 1975). The running of the statute of limitations begins when a plaintiff knows or has reason to know of his injury. *Id*. Here, Oakley at the latest should have known of his alleged constitutional injuries on the date he was injured in the small exercise yard, July 14, 2007.

At first blush it would appear that several allegations set forth in Oakley's complaint, dated July 29, 2010, and received for filing by the Clerk on August 2, 2010, would be barred under the three-year limitations period. As a general rule, however, if a dispute is subject to mandatory administrative proceedings, the plaintiff's claim does not accrue until the conclusion of those proceedings. *See generally,* 54 C.J.S. Limitations of Actions § 185, Pendency of Other Legal Proceedings, Stay, Arbitration, and Choice of Forum or Remedy. Here, Oakley attempted to exhaust administrative proceedings well into calendar year 2008. While it appears that Oakley's claims concerning the July 14, 2007 assault and alleged mistreatment prior to July 29,

2007 may be time-barred, the waters are murky. Thus, the Court will address the claims on the merits.

IV. *Analysis*

The sole defendants named in this action are J. Michael Stouffer, Commissioner of Corrections and Bobby Shearin, Warden of WCI. Neither individual was directly involved in supervising the small yard at the time of the incident nor responsible for Oakley's medical care or conditions of confinement after the incident.

To the extent Oakley intends to premise liability against these Defendants based on the doctrine of respondeat superior, the doctrine does not apply in § 1983 proceedings. *See Monell v. Department of Social Services,* 436 U.S. 658, 691 (1978); *Love-Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004). Absent an allegation of personal involvement or unconstitutional policy or custom, there is no legal basis to find the Commissioner or Warden liable. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

To establish supervisory liability on the part of the named Defendants, Oaklay must show that: (1) Defendants had actual or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury; (2) Defendants' response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between Defendants' inaction and the particular constitutional injury suffered by Oakley. *See Shaw v. Shroud*, 13 F.3d 791, 799 (4th Cir. 1994). Aside from allegations that ARP complaints or other correspondence went unanswered, Oakley has provided no evidence demonstrating any of these factors. Both Defendants are entitled to dismissal from this action. Such dismissal, however, does not end the Court's inquiry.

Plaintiff's failure to protect claim as set forth in the Complaint, provides no basis for liability. The circumstances leading up to Oakley's assault were not foreseeable. Furthermore, corrections personnel placed Oakley out of harm's way following the incident and saw to it that the prisoners responsible for Oakley's injuries were sanctioned and ultimately subjected to criminal prosecution. ECF No. 17, Exhibit 2. Oakley's claim that he was housed with a prisoner who suffered from hepatitis and corrections personnel "hoped they would fight" does not rise to the level of constitutional magnitude as it appears that the two men were housed together without incident.

There is no doubt that Oakley received "multiple small lacerations" during the attack. He was kept in the prison infirmary for several days where his wounds were treated and dressed and he was provided pain relief. X-rays revealed no bony abnormality. ECF No. 17, Exhibit 3. Although Oakley's ARP complaints and court submissions assert that his medical condition was extremely serious and his complaints of pain and requests for treatment following the incident were continuously ignored, the medical record as submitted shows Oakley did not voice these concerns during scheduled medical clinic visits in November 2007 and February 2008. *Id.* There is no record evidence that corrections personnel delayed medical care for Oakley after he vomited blood on July 18, 2007, and that he received care only after a nurse intervened; indeed, there is no medical record prepared by the nurse or other personnel memorializing such event.

The poor conditions of confinement to which Oakley claims he was subjected following his injury and again each time he was transported to court to testify against his attackers were of limited duration. Oakley demonstrates no actual injury resulting from those conditions and thus cannot support a claim for damages arising therefrom.

Based on the foregoing, Defendants' motion for summary judgment shall be granted. A separate Order follows.


Date: June 29, 2011                                   _____/s/_____
                                                      Alexander Williams, Jr.
                                                      United States District Judge